**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
skye@consumersadvocates.com
WILLIAM B. RICHARDS, JR. (SBN 298552)
bill@consumersadvocates.com
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*elliot.david@hotmail.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TED SHIMONO, on behalf of himself, all others similarly situated, and the general public,<br><br>                    Plaintiff,<br><br>              v.<br><br>HARBOR FREIGHT TOOLS USA, INC.,<br><br>               Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code §§ 17200, et seq.<br>2. Violation of California's False Advertising Laws ("FAL"); California Business & Professions Code §§ 17500, et seq.<br>3. Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code §§ 1750, et seq.<br>4. Deceit by Suppression of Facts; Cal. Civ. Code § 1710(3)<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff TED SHIMONO ("Plaintiff" or "Mr. Shimono"), by and through his undersigned counsel, hereby brings the below claims on behalf of himself, all others similarly situated, and the general public against DEFENDANT HARBOR FREIGHT TOOLS, INC. ("Harbor Freight" or "Defendant") alleging the following on personal knowledge or, where Plaintiff lacks personal knowledge, upon information and belief, including the investigation of his counsel. The claims and other legal contentions alleged in this Complaint are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, or for establishing new law, and all factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery:

## I.   <u>JURISDICTION AND VENUE</u>

1.    This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(a), because the matter in controversy exceeds $5,000,000 exclusive of interests and costs, and this matter is a nationwide class action in which more than two thirds of the Class Members, as defined herein, are citizens of states other than California. Defendant maintains its headquarters and principal place of business in Calabasas, California. Plaintiff is domiciled in the county of Riverside, State of California, and is a citizen of California.

2.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in Calabasas, California, and Defendant has continuous and systematic contacts with this District and the state of California as to essentially render it "at home" in this District. Moreover, Defendant has purposefully availed itself to the laws and benefits of doing business in this District and Plaintiff's claims arise out of Defendant's forum-related activities.

3.    Venue is proper because Defendant "resides" in this District, and a substantial part of the events alleged in this Complaint giving rise to Plaintiff's claims, occurred in this District.

## II.   NATURE OF THE ACTION

4.     Plaintiff brings this class action to seek redress for himself and a class of consumers, defined herein, who were deceived by Defendant's advertising, marketing, and sales practices.

5.     Harbor Freight Tools USA, Inc. is a discount tool and equipment retailer. Harbor Freight offers its products through over 600 retail stores in 47 states, by telephone catalog sales through call centers, and via its own online website.[1]

6.     Through comprehensive and consistent fake-sale-price advertising, Defendant falsely created in consumers the impression that "sale priced" merchandise was reduced in price from Defendant's previous retail prices, that advertised "savings" were real when they were not, and that advertised "comp at" prices were valid comparisons with equivalent merchandise—also false.

7.     These deceptive tactics induced consumers to purchase poor-quality merchandise at inflated prices.

8.     During the Class Period, Defendant Harbor Freight deceived, and continues to deceive, Plaintiff and the Class by falsely advertising its merchandise, including, but not limited to, tools, equipment, accessories, and other products at purported "sale" prices. Defendant's advertising uniformly compared these ostensible sale prices to invented "regular" prices, "Only" prices, and "comp[are] at" prices for the merchandise, which were, and are, misrepresented as prevailing market retail prices, customary store prices, and/or prices of comparable merchandise, from which fictitious savings were then calculated and communicated to the consumer through various advertising mediums.

9.     Defendant's supposed discounts were calculated from sham "regular" or "comp at" prices that were artificially inflated, and were never the regular retail prices for Defendant's merchandise or comparable retail prices for products of the same quality or value as the products that Defendant sold. In addition, the represented "retail" or "comp

---

[1] http://www.harborfreight.com/ (last visited May 4, 2016)

at" prices were not the prevailing market retail prices within three months immediately preceding the publication of the advertised former prices, as required by California law.

10.     Defendant advertised its deceptive and misleading pricing campaign to consumers at the point of purchase and through periodically-mailed and distributed flyers, catalogs, circulars, and other promotional materials, in-store displays, web pages, emailed "offers," and print advertisements. For example, in many of Defendant's retail outlets, the fictitious discount price scheme is prominently displayed throughout the store, advertising supposed deep discounts on essentially every single item of inventory sold in the store.

11.     Defendant sells branded products, as well as their own exclusive house-brand products, at a particular price- and quality-point. There is no "comparable price" for many of these products other than the price set by Defendant. The difference between the "sale" price and the advertised "regular" or "comp at" prices is a false discount used to induce consumers into purchasing products they have been led to believe are significantly discounted.

12.     Through its false and deceptive marketing, advertising, pricing, and sales scheme, Defendant violated, and continues to violate, California law prohibiting the advertising of goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Defendant violated, and continues to violate, California's Business & Professions Code §§ 17200, *et seq*. ("UCL"), California's Business & Professions Code §§ 17500, *et seq*. ("FAL"), California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. ("CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

13.     In addition, Defendant advertises coupon savings that state, for example, "**20% off your purchase**" in bold, giant red type, with a tiny qualifier "*of any one item*" below.  These "coupon savings" also constitute deceptive advertising, for two reasons.

14.     In addition to printing the coupons so as to deliberately mislead customers—the fact that the customer will receive 20% off one item rather than their entire purchase is deliberately obscured from the consumer—when consumers try to use the "% off" coupon, sales associates do not apply the percentage savings to an item of the customer's choosing but rather apply the percentage discount to the lowest-priced item in the customer's order, rendering false the "*any* item" percentage savings as advertised.

15.     Further, Defendant frequently advertises different prices for the same item simultaneously, and when customers attempt to purchase such merchandise at retail stores, Defendant charges the consumer the highest advertised price, in violation of California consumer protection laws.

16.     Accordingly, Plaintiff brings this action on behalf of himself and all other similarly situated consumers/customers who have purchased one or more products at Defendant's retail stores, through the call center, or online, which were deceptively represented as discounted from false former prices, and/or who were overcharged for advertised merchandise or deceptively induced by misleading coupon offers to purchase merchandise. Plaintiff brings this action in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased deceptively priced products or been defrauded by Defendant in their purchases. Plaintiff, on behalf of himself and the Class, seeks restitution and other equitable remedies, including an injunction under the UCL and FAL, as well as restitution and damages, and an injunction under the CLRA.

## III.   PARTIES

**Plaintiff Ted Shimono**

17.     Plaintiff TED SHIMONO is a resident and citizen of Lake Elsinore, California. Mr. Shimono, in reliance on Defendant's false and deceptive advertising, marketing, and "discount" pricing schemes, purchased numerous tools and other items of

merchandise for himself and his family between approximately June 2013 and March 2016 at a Harbor Freight retail store located in Murrieta, California.

18.    Among other merchandise, Mr. Shimono purchased security lights, tool bags, saw horses, and numerous other tools and other merchandise from Defendant.

19.    All of this merchandise was advertised as having "regular" prices, "retail" prices, "comp at" prices, or "[o]nly" [regularly priced] prices, and as being offered to the customer at "sale" prices wherein the purported sale price gave the illusion of offering large discounts from the store's customary price or market price.

20.    These advertised discounts were illusory.  These products had not actually been sold or offered for sale at the represented advertised prices at Defendant's retail stores, online store, or in its catalog, at that price within the 90-day time period immediately preceding Plaintiff's purchases, and any comparison prices were not valid comparisons to equivalent or comparable merchandise.

21.    Plaintiff suffered injury and was damaged economically by his purchases of Defendant's products.  Plaintiff was induced by Defendant's falsely advertised discounts and sale prices to buy products he would not have purchased absent the false advertising, and to purchase those products at prices greater than their true market value.

22.    Mr. Shimono would consider buying Harbor Freight products again if the sales prices were not marketed in a deceptive manner that is likely to mislead consumers like himself.

**Defendant Harbor Freight Tools USA, Inc.**

23.    Defendant Harbor Freight Tools USA, Inc. is a Delaware corporation that maintains its principal corporate executive offices and headquarters in Calabasas, located in Los Angeles County in the state of California. Defendant is registered to do business in California as entity number C2111204.

24.    Defendant operates Harbor Freight Tools retail stores as well as the harborfreight.com website and a call center to process telephone orders, and advertises, markets, distributes, and/or sells tools, equipment, accessories, and other merchandise

and products in California and throughout the United States. Plaintiff is informed and believes, and based thereon alleges, that Defendant is legally responsible for the events, happenings, circumstances, and/or occurrences alleged herein, and for the damages suffered by Plaintiff and Class Members, as defined herein.

## IV.   LEGAL AND FACTUAL ALLEGATIONS

### A.   False Former Price Comparison Schemes Are Unlawful

25.   The United States Federal Trade Commission describes false "former price comparison" schemes as follows:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one.
>
> *If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.*

16 C.F.R. § 233.1(a) (emphasis added).

26.   California law also expressly prohibits false former pricing schemes:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code §17501.

27.    California law further prohibits businesses from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."[2]

28.    During the Class Period, Defendant intentionally concealed, and continues to conceal, material facts its customers, including Plaintiff and Class Members, regarding the truth about its former-price and comparison price advertising in order to induce them to purchase Defendant's products in retail stores, through call centers, and/or on its internet website.

29.    As an illustrative example, Harbor Freight advertises the market price and sale price of a 3/8-inch diameter, 50-foot retractable hose reel as: "comp at $166.00" – "Sale:  $89.99".[3]

---

[2] See Cal. Civ. Code § 1770(a)(9) & § 1770(a)(13).

[3] https://web.archive.org/web/20160427044119/http://www.harborfreight.com/38-in-x-50-ft-Retractable-Hose-Reel-69265.html (last visited May 3, 2016).

7



3/8 in. x 50 ft. Retractable Hose Reel

CENTRAL PNEUMATIC

*"Impressed with the quality, covers your entire garage at an unbelievable low price."*
Street Trucks Magazine

Central Pneumatic - Item#69265

Read 69 Reviews   |   Write A Review

**Retractable hose reel has a locking ratchet system to keep hose at desired length**

comp at $166.00
Sale: $89.99
Qty: 1          ADD TO CART

30.    But a comparable hose reel, of equivalent or superior quality, by name-brand manufacturer Husky, is available from Home Depot for $64.98.[4]

31.    Moreover, an essentially identical unit to the one offered on "Sale" by Defendant – albeit photographed from a different angle – is available from a competitor, ReelWorks, for $59.99, reduced from its suggested <u>retail</u> price of $89.99[5]—the same $89.99 price that Harbor Freight claims is a drastically-reduced "Sale" price. And the competitor's product is rated for 20% higher pressure.[6]

---

[4] http://www.homedepot.com/p/HUSKY-3-8-in-x-50-ft-Hybrid-Retractable-Hose-Reel-540HR-RET-HOM/205331905 (last visited May 3, 2016).

[5] http://www.northerntool.com/shop/tools/product_200517529_200517529 (last visited April 26, 2016).

[6] *Id.*



32.    Further, the <u>exact</u> same unit, made by the same manufacturer, is available from a retail business on Amazon.com for $67.29 plus shipping.[7]



---

[7] http://www.amazon.com/Central-Pneumatic-Retractable-Water-Hose/dp/B00AVKCJIA) (last visited May 3, 2016).

9

33.     Defendant's retractable hose reel was never offered for sale - or ever valued at - $166.00 as Defendant claims.  Defendant's advertised "comp at" price is simply false and deliberately intended to deceive consumers into paying higher prices.

34.     This is not by any stretch of the imagination an isolated case.  Harbor Freight deliberately advertises similar fake sale pricing on countless items of merchandise, in all categories of equipment, in an effort to mislead consumers.

35.     Defendant's fake sale pricing extends throughout its entire price range.  A brass pneumatic coupler set that Defendant claims to "comp at $8.99" and dramatically reduce to a "Sale" price of $4.99[8] is available from a competitor for $3.40.[9]  The two advertisements are shown below.

**<u>Harbor Freight</u>**



_____

---

[8] http://www.harborfreight.com/brass-industrial-quick-coupler-set-5-pc-61915.html (last visited May 4, 2016).

[9] http://workersoutlet.com/Central-Pneumatic-5-Piece-Solid-Brass-Industrial-Quick-Coupler-Set-B006ZBC43E.php (last visited May 4, 2016).

CLASS ACTION COMPLAINT

**Competitor**



Central Pneumatic 5 Piece Solid Brass Industrial Quick Coupler Set
792363682374

Read Reviews | Save Product

$3.40 + Shipping
In Stock. Pricing as of 2016-04-26 22:04:34

36.     Similarly, during the Class Period Defendant advertised comparison prices for an electrical welding unit, below, as "Only $299" or "comp at $519."  Both are false.

37.     The table below shows the advertised price history of this unit, the Chicago Electric Welding 170 Amp-DC, 240 Volt, MIG/Flux Cored Welder, uniformly identified by Defendant by the exact same stock number and specifications. This unit was never sold at the former retail price or comparison price advertised by Defendant.

**Defendant's "Sale" Pricing History:  Welding Unit**[10]

| <u>Date</u> | Defendant's <u>comparison price</u> | Advertised <u>"Sale" price</u> |
|---|---|---|
| April 20, 2016 | "comp at $519.99" | 184.99 |
| October 7, 2015 | "comp at $519.99" | 179.99 |
| September 9, 2015 | Only $299.99 | 189.99 |

---

[10]     https://web.archive.org/web/20150909102601/http://www.harborfreight.com/welding/mig-flux-welders/170-amp-dc-240-volt-migflux-cored-welder-68885.html, (last visited April 20, 2015)

CLASS ACTION COMPLAINT

| June 27, 2015 | Only $299.99 | 189.99 |
|---|---|---|
| February 23, 2015 | Only $299.99 | 189.99 |
| September 27, 2014 | Only $299.99 | 199.99 |

38.     In yet another example, Defendant currently lists an impact wrench for "Sale" at $99.99 and advertises a "compare at" price of $249.99. But Defendant has for years sold this tool at the exact same current "Sale" price, or less—though it nearly doubled the false comparison price to its current $249.99, further exaggerating the illusion of savings.

39.     Below are examples of the "compare at" and sham implied-retail "Only" prices at which Defendant has priced this tool, a Central Pneumatic brand 1/2 in. Air Impact Wrench, Item#68424, and the corresponding "Sale" prices over time.

**Defendant's "Sale" Pricing History:  Impact Wrench**

| **Date** | **Comparison price** | **Advertised "Sale" price** | **Claimed savings for consumer** |
|---|---|---|---|
| April 20, 2016 | "comp at" $249.99 | $99.99 | $150 |
| February 16, 2016 | "comp at" $249.99 | $84.99 | $165 |
| December 21, 2015 | "comp at" $249.99 | 99.99 | $150 |
| July 21, 2105 | Only:  $129.99 | 99.99 | $30 |
| March 16, 2015 | Only:  $129.99 | 99.99 | $30 |
| July 29, 2014 | Only:  $129.99 | 99.99 | $30 |
| March 1, 2014 | Only:  $129.99 | 84.99 | $45 |
| January 22, 2014 | Only:  $129.99 | 97.99 | $32 |
| June 27, 2013[11] | Only:  $129.99 | 94.99 | $35 |

---

[11]     https://web.archive.org/web/20130318215858/http://www.harborfreight.com/12-in-professional-air-impact-wrench-68424.html (last visited April 26, 2016).

CLASS ACTION COMPLAINT

40.    Defendant's current advertised "Sale" price of $99.99 is the highest price at which Defendant has ever offered this tool for sale to consumers.

41.    Defendant's "comp at" wording for its sham retail or former-retail advertised prices is a recent development. Defendant previously referred to its phony comparison prices as the merchandise's "regular price" or as an "Only" price, with a strike-through of that price suggesting that the fake sale price was an actual reduction from Defendant's usual retail price.

42.    For example, in July 2015 Defendant advertised a 6000 lb. capacity scissors lift as having a regular price of "~~Only $1799.99~~" and a purported sale price of $1499.99[12] as shown below:



---

[12]    https://web.archive.org/web/20150715081832/http://www.harborfreight.com/6000-lb-capacity-scissor-lift-91315.html; last visited May 19, 2015.

43.    In October 2015, this same unit was being advertised as "comp at" $~~1955.99~~ instead of "~~Only 1799.99~~," with the same "Sale" price of $1499.99.[13] Defendant's "Sale" price hadn't changed at all, but the savings promised to consumers had leapt by 50%.[14]

44.    In fact, Defendant used fake "strike-through" prices and "regular" prices, rather than "comp at" prices, to deceive consumers through nearly all of the class period.

45.    To illustrate, this is Defendant's advertising circular from March 2015[15] during the class period, showing sham "regular" retail prices and fictitious savings calculated from those sham prices:



46. Other examples of Defendant's fake sale pricing, from its catalog, website, and retail stores, are too numerous to show here.  Exhibit 1 includes Defendant's current "Sale" prices for its products offered on the Harbor Freight website. Defendant's current version of its fake retail price advertising scheme typically displays sham "comp at" comparison prices, rather than the fake strike-through prices, "Only" prices, "regular" prices, or other equally misleading descriptions of sham retail comparison prices that

---

[13] https://web.archive.org/web/20151008052111/http://www.harborfreight.com/6000-lb-capacity-scissor-lift-91315.html
[14] *Id.*
[15] https://web.archive.org/web/20150321151920/http://www.harborfreight.com/

Defendant has previously used. The wording varies but the result is the same:  throughout the Class period, Defendant's fake "Sale" price advertising has been deceptive, misleading, and in violation of California consumer protection law.

**B.    Harbor Freight's "Comp at" Pricing Scheme is Also Unlawful**

47.    On or around September 2015, Defendant deliberately changed its advertising of claimed retail comparison prices, from previously referring to these phony prices as "regular" prices or "Only" prices—suggesting that even these false former or retail prices were a good value—to instead describing its false comparison prices as "comp at" prices, in an attempt to further deceive consumers including Plaintiff and Class Members.

48.    Defendant's recent variation on its deceptive advertising scheme is equally deceptive and continues to violate California and Federal law.

49.    Federal advertising regulations specifically reference these types of deceptive pricing practices.

50.    In 16 CFR §§ 233 *et seq*., the Federal Trade Commission sets forth guidance regarding what the agency considers deceptive pricing schemes, including "comparable value" retail price comparisons.

51.    According to the FTC, any "advertised higher price must be based upon fact, and not be fictitious or misleading." 16 CFR § 233.2(c).

52.    Such comparison price advertising may only display a prevailing price, not an unrepresentative price, and must be for merchandise "of like grade and quality" that is "obtainable in the area"—"in other words, comparable or competing merchandise" to that being advertised. 16 CFR § 233.2(c).

53.    The FTC further specifies that "[t]he advertiser should, however, be reasonably certain . . . that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area. . . . Unless a reasonable number of the principal

outlets in the area are offering [the same merchandise at the advertised comparison price], this advertisement would be deceptive." *Id*.

54. During the Class Period, Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiff and Class Members the truth about its advertised "Sale" prices and advertised, purported former "Only" prices and "comp at" comparison prices, as well as alternate terms for comparison prices that Defendant has used during the Class Period to imply former retail prices, market prices, and purportedly valid comparison prices.

55. At all relevant times, Defendant has been under a duty to Plaintiff and the proposed Class to disclose the truth about its false sale pricing, fictitious comparison prices, and illusory discounts.

## C. **Other Deceptive Advertising Practices Employed by Harbor Freight**

56. The fictitious discounts and sale prices, as alleged herein, are not the only deceptive advertising that Defendant maintains.

57. Defendant advertises that ". . . Harbor Freight offers more than 7,000 tools and accessories at quality levels that match or exceed competing brands, but at prices that are up to 80% less."[16]

58. Defendant also claims in its advertising: "*We buy direct from the same factories who supply the expensive brands and pass the savings on to you.*"[17]

59. Defendant elsewhere claims to manufacture its tools and equipment itself, in its own factories, in which Defendant claims to have "invested millions" in order to supply "highest quality" merchandise at value prices.[18]

60. Defendant claims that "… our tools perform to professional standards and stay tough for the long haul."[19]

---

[16] http://www.harborfreight.com/about-us (last visited May 4, 2016).
[17] *Id.*
[18] *Id.*
[19] *Id.*

CLASS ACTION COMPLAINT

61.     Defendants' customers report differently.  Customer reviews include:

"Harbor Freight sells dangerous garbage"; ". . . piece of junk gauge from Harbor Freight was off almost 10 psi."  "Don't buy it at Harbor Freight if you need it to work more than once." "…falling apart in my hands." ". . . did not work from the very beginning"; "Turned it on and motor burned up"; ". . . safety switch failed after only two uses, after only about 90 days [right after the warranty expired]"; "[floor-tile removing tool] broke after removing approximately 15 tiles"; ". . . second time I used it the pump stopped working."

62.     Much of Harbor Freight's merchandise, which Defendant claims is "highest" quality or "professional quality," is, in the opinion of many of those who purchased it, instead substandard and of poor quality.

63.     Specifically, regarding Defendant's retractable hose reel, for which Defendant's false comparison prices are discussed in Paragraphs 29-33 above, customer comments about this product include:

- ". . . had for just over 90 days when the hose blew out."

- "Hose blew up after only 3 months"

- "…fine for about a month then the hose began to leak air."

- "The hose is unusably cracked for the entire 1" above the end fitting. I bought my hose reel in 10/14, so it's approx [sic] 9 months old."

- "… one week later the hose has three holes in it . . .  The hose is rated for 250 psi, my compressor doesn't go above 125 psi."

- ". . .  only used a dozen times. First hose broke at spring, replaced hose and fitting, one week later reel would not retract. 1 year 12 uses will not buy again."

17

CLASS ACTION COMPLAINT

- "the hose needs patched every few days and I only run about 135psi."

- "Purchased two of these terrible [products] and both have completely failed"

- "… the rubber hose breaks first at the fitting after about a month of use (just in time for the warranty to expire) then the spring that retracts the hose completely breaks . . .  after about 3 months the rubber hose begins to tear and needs to be replaced. these are completely useless and should be avoided at all costs."

64.   Such comments are not unique to this product, or any of the products mentioned herein.

65.   These are just a few examples of customer descriptions of the equipment for which Defendant claims "Great Quality," "performs to professional standards" and "quality levels that match or exceed competing brands."

66.   To further the deception, Defendant omits from its advertising a crucial fact about much of its merchandise:  in contrast to warranties offered in the trade by its competitors for similar mechanical equipment, for which warranty periods typically range from one year to three years or more, Defendant offers only a 90-day limited warranty on such equipment, and expressly disclaims all other warrantees—including the common law warranty of merchantability.

67.   Warranty length is an important feature for consumers in determining the quality and value of merchandise.  Where Defendant purports to compare its "Sale" prices to "comp at" prices for ostensibly similar merchandise, Defendant's price comparisons are false and misleading for this reason as well, because in addition to comparing its "sale" prices with those of tools of superior quality, the warranty that Defendant offers is not comparable to that offered by competing retailers.

68.   Defendant's advertising claims of "professional quality" merchandise, and of sourcing that merchandise "at the same factories" as more expensive, reliable brands,

and quality that "matches or exceeds" competing brands, are also false and deceptive, just as Defendant's false sale price advertising, false coupon sales, deceptive advertising of discounts and "% off" offers, and other deceptive practices described herein.

**D.    Plaintiff's Experience with Harbor Freight**

69.    Between approximately June 21, 2013 and March 2016, Plaintiff shopped at the Harbor Freight Tools USA retail store in Murrieta, California numerous times to purchase tools, equipment, accessories, and other related merchandise for himself and his family.

70.    Plaintiff was induced to visit the retail store by print, direct-mail, and online advertising that purported to offer steep discounts on quality merchandise.

71.    That advertising purported to offer "Sale" prices and compared those purported sale prices against much higher prices that Defendant intended consumers to believe were Defendant's prior retail prices, or actual or comparable market prices for the same merchandise or merchandise of the same quality.

72.    On each visit to the store, Plaintiff observed signage within the store and price tags on or near the merchandise advertising significant savings on essentially all merchandise in the store. Those claimed savings were calculated from what were advertised by Defendant as former retail prices or comparable market prices.

73.    Defendant's marketing, advertising, and point-of-sale information communicated to Plaintiff that all of this merchandise represented significant savings relative to the products' normal retail prices and comparable market values.

74.    Based on this advertised information, Plaintiff decided to purchase numerous items of merchandise during these visits, including, but not limited to, solar security lights, tool bags, tarps, electric drills and drill bits, hammers, tool racks, storage containers, and other merchandise, and did in fact purchase those items.

75.    Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, among other items, Plaintiff purchased in or around June 2015 a solar security light. The product advertising displayed a strike-through price of "Only

CLASS ACTION COMPLAINT

$59.99", suggesting that Harbor Freight's usual price for this unit was $59.99 and that the unit was being offered at a discount from that former price. This advertisement represented that the unit was at that time being offered at a substantial discount from the former price, showing the current price as: "Sale: $39.99".

76. Defendant's purported strike-through price and the implied price discount and savings were false and misleading, as the prevailing retail price for the merchandise during the three months immediately prior to Plaintiff's purchase was not the strike-through price advertised by Defendant.

77. Relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff purchased this solar security light and was damaged thereby economically.

78. Further, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff also purchased during the period of approximately January through June 2015 a number of protective tarps in different sizes.

79. Defendant's advertising for these tarps, which ranged in size from 5'6" by 7' 6" to approximately 19' by 29', showed strike-through prices of, for example, "Only $6.99", "Only $8.99", and "Only $39.99", suggesting that these were Harbor Freight's usual prices for these products.

80. They were not. Defendant's advertised strike-through prices or "Only $xx.xx" implied former retail prices were never prices at which Defendant previously sold this merchandise.

81. Defendant's purported former prices and the implied price discount and savings to the consumer were false and misleading, as the prevailing retail prices for the merchandise during the three months immediately prior to Plaintiff's purchase was not the former price advertised by Defendant.

82. Defendant's purported "comp at" "comparable" prices and corresponding "discounts" and "savings" were similarly false and misleading, as the prevailing retail

prices for equivalent or comparable merchandise during the three months immediately prior to Plaintiff's purchases were not the prices displayed by Defendant.

83.   Relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff purchased the above and other merchandise, and was damaged economically thereby.

84.   Plaintiff would not have purchased the tools and equipment, or would not have paid as much for them, absent the affirmative misrepresentations made by Defendant and Defendant's failure to disclose pertinent information. As a result, Plaintiff has been personally injured by and suffered economic injury as a direct and proximate result of Defendant's unlawful, unfair, and fraudulent conduct.

85.   Defendant was aware that its comparative price advertising currently is and at all times during the Class period was, false, deceptive, misleading, unlawful, and/or unfair under California law.

86.   Plaintiff relied upon Defendant's artificially inflated comparison prices and false discounts when purchasing tools and equipment from Defendant. Plaintiff would not have made such purchases but for Defendant's representations of fabricated original, "regular," market or "comp at" prices and false discounts.

87.   Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and made purchases believing that they were receiving substantial discounts on items of greater value than they actually were. Plaintiff, like other Class Members, was lured in, justifiably relied on, and was damaged by these deceptive pricing schemes that Defendant carried out throughout the Class Period.

88.   Plaintiff would like to shop at Harbor Freight again, but cannot trust Harbor Freight's current price-comparison advertisements. Without tracking Harbor Freight's advertisements on a daily basis for each and every item, and conducting intensive price, quality, and market research and analysis, Plaintiff and Class Members have no realistic way to know which of Harbor Freight's current or future price comparisons are false or

deceptive. If the Court were to issue an injunction ordering Harbor Freight to comply with California's comparative price advertising laws, and prohibiting Harbor Freight's use of the deceptive and misleading practices discussed herein, Plaintiff would likely shop at Harbor Freight again in the future.

## V.   CLASS ACTION ALLEGATIONS

89.   Plaintiff brings this action on behalf of himself and all other similarly situated Class Members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and seeks certification of the following Class against Defendant for violations of California consumer protection laws:

> All individuals in the United States who purchased Defendant's purportedly discounted products, advertised at false "Sale" prices, for personal, family, or household use, and not for resale, within four years prior to the filing of this Complaint ("Class Period").

90.   Excluded from the Class is Defendant, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers, and directors of Defendant. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

91.   **Numerosity**: The Class is so numerous that joinder of all Class Members is impracticable. Plaintiff is informed and believes, and based thereon alleges, that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendant's conduct, as alleged in detail herein. The precise number of Class Members is currently unknown to Plaintiff.

92.   **Predominance and Commonality**: This action involves common questions of law and fact, which predominate over any questions affecting individual

Class Members. These common legal and factual questions include, but are not limited to, the following:

   a)   Whether, during the Class Period, Defendant used false comparison price labels and falsely advertised price discounts on its products sold in its retail stores, by telephone, and/or online;

   b)   Whether, during the Class Period, the "Only", "comp at", "original", "regular price" or other "market" prices or comparison advertised by Defendant were the prevailing market prices for the respective Harbor Freight products during the three-month period preceding the dissemination and/or publication of the advertised former prices or comparison prices;

   c)   Whether Defendant's alleged conduct constitutes violations of the laws asserted;

   d)   Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

   e)   Whether Defendant engaged in false or misleading advertising;

   f)   Whether Plaintiff and Class members are entitled to damages and/or restitution, and the proper measure of that loss; and

   g)   Whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparisons.

93. **Typicality**:  Plaintiff's claims are typical of the claims of Class Members because, *inter alia*, all Class Members have been deceived or were likely to be deceived by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members. As such, Plaintiff has the same interest in this matter as all Class Members, and has no interests antagonistic to the interests of other Class Members.

CLASS ACTION COMPLAINT

94.   **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation who are committed to the vigorous prosecution of this action, and have no interests in the litigation that would potentially conflict with the interests of the Class. Plaintiff has no antagonistic or adverse interest to those of the Class.

95.   **Superiority**:  The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to him and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class Members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class Members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant would be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

96.   All Class Members, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact claiming that former "original" advertised prices were in existence. Due to the scope and extent of Defendant's consistent false "discount" price advertising scheme, disseminated in a years-long campaign to California and nationwide U.S. consumers via a number of different platforms—i.e., in-store displays, print advertisements, etc.—it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all Class Members. In addition, it can be reasonably presumed that all Class Members, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing Harbor Freight merchandise at Harbor Freight stores, through the call center, and online.

97.   **Ascertainability**:  Class members can self-identify once the class is certified and notice goes out.  In addition, Defendant keeps extensive computerized records of its customers through, *inter alia*, direct-mailing address databases, online contact forms, a customer loyalty program called the "Inside Track Club", call center records, and general marketing program data.  Defendant has one or more databases through which a significant majority of Class Members may be ascertained, and Class Members may therefore be contacted both through Defendant's existing contact information, including email and home addresses, and through social media and/or other means through which notice of this action can be disseminated in accordance with due process requirements.

## COUNT I

## VIOLATIONS OF THE UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

98.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

99.   Plaintiff brings this Claim individually and on behalf of the members of the Class against Defendant.

100.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

101.   The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices - but only that such practices occurred.

102.   A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

103.   Defendant's actions, as alleged in detail herein, constitute "unfair" business acts or practices because Defendant engaged in misleading and deceptive price comparison advertising that represented false "regular" prices or comparison prices and false "discount" prices leading to phantom markdowns.  Defendant's acts and practices offended, and continue to offend, established public policy and Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities substantially injurious to consumers.

104.  The harm to Plaintiff and Class Members outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

105.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

106.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

107.   Defendant's acts and practices, as alleged in detail herein, have deceived Plaintiff and Class Members, and are highly likely to deceive members of the consuming public. Plaintiff and Class Members relied on Defendant's fraudulent and deceptive representations regarding its "regular" prices, "comp at" prices, or other suggestions of "market" prices, and the corresponding promised discounts for the Harbor Freight products, which Defendant sells at its retail stores, through call centers, and on its website. These misrepresentations played a substantial role in Plaintiff and Class Members' decisions to purchase the products at promised steep discounts, and Plaintiff and Class Members would not have purchased, or would not have paid as much for, this merchandise without Defendant's misrepresentations.

108.   The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC false former pricing schemes, similar

to the ones implemented by Defendant, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an article price, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

109. California law also expressly prohibits false former pricing schemes. Cal. Bus. & Prof. Code § 17501, entitled "*Value determinations; Former price advertisement,*" states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the

locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

110.   As detailed in Plaintiff's Third Cause of Action below, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[advertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

111.   Defendant's practices, as set forth above, have misled Plaintiff, the proposed Class, and the general public in the past, and will continue to mislead in the future. Consequently, Defendant's practices constitute unlawful and unfair business practices within the meaning of the UCL.

112.   Defendant's violations of the UCL through its unlawful, unfair, and fraudulent business practices are ongoing and present a continuing threat that members of the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "regular" or other comparison prices to "sale" prices that created merely phantom markdowns. These practices deceived and continue to deceive consumers, causing financial injury to consumers like Plaintiff and the proposed Class.

113.   Pursuant to the UCL, Plaintiff is entitled to, and hereby seeks, preliminary and permanent injunctive relief ordering Defendant to cease its unfair, unlawful, and/or fraudulent business practices, as well as disgorgement and restitution to Plaintiff and the Class of all of Defendant's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## COUNT II

### VIOLATIONS OF THE FALSE ADVERTISING LAW

#### (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)

114.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

115.   Plaintiff brings this Claim individually and on behalf of the members of the Class against Defendant.

116.   Cal. Bus. & Prof. Code § 17500 provides that "[i]t is unlawful for any...corporation...with intent...to dispose of...personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in *any newspaper or other publication, or any advertising device, or by public outcry or proclamation, <u>or in any other manner or means whatever</u>,* including over the Internet, any statement...which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

117.   The "intent" required by Cal. Bus. & Prof. Code § 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.   Defendant had the intent to dispose of its property through the business practices complained of herein.

118.   This section also provides, "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

119.   Defendant's tactic of advertising discounted prices from false "market" prices, regular prices, or comparison prices associated with Harbor Freight products, which were never the true prevailing "market" prices of those products and were materially greater than the true prevailing prices, was an unfair and misleading practice.

29

This deceptive practice gave consumers the false impression that these or comparable products were regularly sold in the market for a substantially higher price than they actually were, creating in consumers the false impression that Defendant's products were worth more than they actually were.

120.   Defendant misled, and continues to mislead, consumers including Plaintiff and Class Members, by making untrue and misleading statements and failing to disclose information required by California law.

121.   As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and Class Members have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all Class Members, and to enjoin Defendant from continuing these unfair practices in violation of the Unfair Competition Law in the future, and in addition to pay for the cost of notice to the class and Plaintiff's attorney's fees and costs. Otherwise, Plaintiff, Class Members, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## <u>COUNT III</u>

## VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")
### (CAL. CIV. CODE §§ 1750, *et seq.*)

122.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

123.   Plaintiff brings this Claim individually and on behalf of the members of the Class against Defendant.

124.   Defendant is a "person" under Cal. Civ. Code § 1761(c).

125.   Plaintiff and Class Members are "consumers," as defined by Cal. Civ. Code § 1761(d).

126.   Defendant's sale of Harbor Freight products at its retail stores, through call centers, and online, to Plaintiff and the Class, were "transactions" within the meaning of California Civil Code § 1761(e).

CLASS ACTION COMPLAINT

127.   The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

128.   By making affirmative misrepresentations about the products and by concealing material facts about the products, Defendants engaged in deceptive business practices prohibited by the CLRA, Cal. Civ. Code § 1750, *et seq.*, including:

- § 1770(a)(2): Misrepresenting the source, sponsorship, approval, or certification of goods by claiming that the goods are being sold at an approved or certified sale price, when in fact they are not;

- § 1770(a)(3): Misrepresenting the affiliation, connection, or association with, or certification by, another by claiming that competitors sell the goods at the "regular" or "comp at" price, when in fact they do not;

- 1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have by claiming that the goods are being sold at a sale price when in fact they are not;

- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another by claiming that the goods were purchased on sale, or were implying that the goods are a "bargain," when in fact they are not;

- § 1770(a)(9): advertising goods with intent not to sell them as advertised because Defendant knew that the goods were not being sold at a sale a price;

- § 1770(a)(13):  Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

- § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not representing that

CLASS ACTION COMPLAINT

certain goods were once sold at a "regular" price or "comp at" price when in fact they were not.

129.   Defendant had, and has, a duty to make material disclosures about the true nature of the Products and its pricing schemes.

130.   A reasonable consumer would not have purchased nor paid as much for the Defendant's products had Defendant disclosed the truth about the sale prices of the products, as that information is material to a reasonable consumer.

131.   As a result of its violations of the CLRA detailed above, Defendant has caused, and continues to cause, harm to Plaintiff and Class Members and, if not stopped, will continue to harm them. Had Plaintiff known the truth about the Products he would not have purchased, or paid as much for, the Products.

132.   In accordance with Civil Code § 1780(a), Plaintiff and Class Members seek injunctive and equitable relief for Defendant's violations of the CLRA. In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for damages. Plaintiff and Class Members request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including all costs of notice to the class plus attorneys' fees and costs, as provided in the CLRA, Civil Code § 1780 and the Prayer for Relief. *See* Ex. 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IV

## DECEIT BY SUPPRESSION OF FACTS

### (CAL. CIV. CODE § 1710(3))

133.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

134.   Plaintiff brings this Claim individually and on behalf of the members of the Class against Defendant.

135.   California Civil Code Section 1710(3) provides that a "deceit" includes "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

136.   As set forth above, during the Class Period, Defendant suppressed, and continues to suppress, material facts concerning the true nature of its pricing schemes and sales prices. Defendant had, and has, a duty to make these disclosures based on its superior knowledge of its products and pricing schemes.

137.   During the Class Period, Defendant actively concealed, and continues to conceal, material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase its products. Specifically, Defendant actively concealed the truth about its pricing schemes and its "comp at" pricing by not disclosing all facts about the true value of the products or that the products were never sold by Defendant at so-called "regular" prices or that "comp at" prices did not reflect the market value of equivalent or comparable merchandise.

138.   Plaintiff and Class Members were unaware of these concealed or omitted material facts and would not have acted as they did if they had known of those facts.

139.   Plaintiff and the Class suffered injuries that were directly and proximately caused by Defendant's active concealments and omissions of material facts in that they overpaid for the products that were purportedly a bargain.

140.   Defendant's fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiff and Class Members, as they would not

CLASS ACTION COMPLAINT

have purchased the products at all, or would have paid much less for the products, if all material facts were properly disclosed.

141. Defendant's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiff and Class Members' rights and interests. Defendant's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable states' laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## VI. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class Members request that the Court enter an order or judgment against Defendant including the following:

A. An order certifying the Class pursuant to Rule 23(b)(2) with respect to class wide remedies for declaratory or injunctive relief;

B. An order certifying the Class pursuant to Rule 23(b)(3) with respect to class wide remedies for damages, punitive damages, restitution, and injunctive relief;

C. Should the class be un-certifiable under Rules 23(b)(2) or 23(b)(3), Plaintiff may seek an order certifying a "particular issue class" to determine the issue of liability pursuant to Rule 23(c)(4);

D. An order appointing Plaintiff as the Class Representative for the Class and The Law Offices of Ronald A. Marron, APLC and the Law Office of David Elliot as counsel for the Class;

E. An order requiring Defendant to bear the costs of Class notice;

F. Restitution in such amount that Defendant has been unjustly enriched by the benefits conferred on it by Plaintiff and Class Members;

G. For Plaintiff's Count IV, nominal damages, actual damages, punitive damages;

H.      For Plaintiff's Counts I through III, restitution and disgorgement of ill-gotten gains (except for the CLRA), plus injunctive and other equitable relief;

I.      An order declaring Defendant's conduct as unlawful, unfair, and/or fraudulent, and an order enjoining Defendant from unlawfully marketing and selling its Products in violation of federal and state law;

J.      An order awarding Plaintiff his costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest on such monetary relief;

K.      An order requiring an accounting for, and imposition of, a constructive trust upon all monies Defendant received as a result of the misleading, fraudulent, and unlawful conduct alleged herein; and

L.      Such other relief to which Plaintiff and Class Members may be entitled to at law or in equity.

### JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: May 20, 2016                    Respectfully submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF**
**RONALD A. MARRON**
Ronald A. Marron, Esq.
ron@consumersadvocates.com
651 Arroyo Drive
San Diego, CA 92101
Telephone: (619) 696-9006
Fax: (619) 564-6665

*/s/ David Elliot*
David Elliot
**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*elliot.david@hotmail.com*

CLASS ACTION COMPLAINT

2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997

***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT